Your Honor, Carl Gunn, appearing before Mr. Moreno. I think that's his father's name, sir. That's right, yes. I think that mixed up in the process somewhere. I represent Mr. Moreno. I'm going to try to reserve three minutes for rebuttal, and I'll do my best to keep track of my time. As Your Honors know, there are a number of issues in the briefs. I'm going to start with the Court's permission with the two issues that affect all of the counts we're challenging, which is everything except the illegal reentry count. First, there's the failure to include the right to resist excessive force in the self-defense instructions. Second, there's the exclusion of the defense expert's testimony. I can start with whichever ones of those the Court may prefer, but I'll start with the first of them in that event. On the failure to include the right to resist excessive force, there's three critical points. First of all, the government has entirely the wrong focus in its brief when it talks about everything that Officer Lindy testified about. What matters when you're talking about whether to give a theory of defense instruction is the defense version of the evidence, and that's what Mr. Moreno talked about in his statement. And I actually give you or try to give you a detailed summary of that in the reply brief at page 4. He said things like, I thought this guy is going to lose a bullet and kill me. I thought he will lose a bullet. It fired for the third time, and I saw the shot almost hit my cousin. I wanted it fully discharged so I would be arrested, you understand, and neither of us would be shot. That's the evidence you assume is true for purposes of deciding whether an instruction needed to be given. But why wasn't the self-defense instruction enough to cover this theory? Well, it wasn't enough under this Court's precedent, Your Honor, in United States v. Span. But Span was different because there the jury had been told that if they thought it was an officer, a Federal officer, that then they didn't have the defense. And that wasn't the jury wasn't told that here. Right. There were actually two issues in Span, though. Another discussion in Span talks about whether the instruction the defense proposed was sufficient to preserve or set forth the excessive force issue. And the defense proposed what was essentially exactly this instruction. And the Court said about this very instruction, quote, it does not amount to a proposed instruction on the right to offer reasonable resistance to repel any excessive force used by Federal law enforcement officers. Now, Span is a little confusing because there are two instructions at issue in Span that the Court's discussing. One is the instruction that was actually given, which is the one Your Honor is referring to, and they said that didn't give excessive force at all. But then they also discussed whether the defendant had preserved the issue of an excessive force instruction. But so even if we say you preserved it, what difference does it make? Because the self-defense instruction seems to have allowed the argument that he had the right to resist. Well, Your Honor, Span says it doesn't. The language I just used. But Span is different because there being an officer was a defense, was a counter to the defense, and that's not true here. But Span is addressing two questions. The first question is whether that instruction covered excessive force. The second, as part of its discussion, was whether the defendant preserved the excessive force issue. In deciding whether the defendant preserved the excessive force issue, it had to look at the instruction the defendant proposed. And it looked at that instruction that the defendant proposed, and it said what I just read. But I'm asking, so say, let's give you the second part, that you preserved the issue. Why is this not a harmless error, then? What difference does it make? Because you got an instruction that basically gave you the argument. Because I think, quote, unlawful force, unquote, doesn't necessarily mean to a jury what excessive force means. I mean, I think what Span says is it's not enough to say unlawful force. It said that the unlawful force language did not preserve or set forth an excessive force issue. That's what Span holds as part of its reasoning. But part of Span was that if you're a Federal officer, it's not unlawful force. I mean, the concepts were intertwined in Span because the jury had been told this thing about if you knew it was an officer, you don't have the defense. Since this jury wasn't told that, I don't understand why excessive force isn't unlawful force. It would, well, only, I guess, Span addressed that very language. And Span, in the reasoning I just read, said that unlawful force instruction doesn't include excessive force. I mean, that's one part of the reasoning of Span, and I think this Court has to follow  I mean, you could argue, I suppose, one version of unlawful might be to read it that way, but Span didn't read it that way. And Span had the issue before it, albeit in the context of whether the unlawful language preserved the excessive language. The Court actually doesn't need to resolve the case on this issue because there is, of course, my remaining issue about the discovery sanction, and perhaps I can talk about that a little bit. But before you move on, help me understand whether this is an argument that would essentially require reversal of all the counts other than the illegal reentry. It would. And why would it affect in any way the charge of stealing the vehicle or attempted stealing the vehicle? Because the stealing the vehicle is based on the force which happened during the assault defense. Now, there are other reasons the stealing the vehicle count doesn't survive. There's no evidence of an intent to be. Right. I'm just trying to understand the Span argument and how broad it would be. It's because the force that happened during the fight led to everything else, basically, except the illegal reentry. That force is what all the other charges are premised on. But where's the gun when he gets in the vehicle? Well, the gun is in the officer's hands. Right. Right. But the government's theory about the attempted robbery of the vehicle is it's based on the force when he wrestled the officer down, et cetera. But do let me, since Your Honor has some doubts at least about the excessive force, I would urge you to look back at Span, but I'm sure you have. Maybe you could look at it again. Let me address the exclusion of the defense expert, because that's a case where I think an issue where there's case law almost directly on point, really. There are two issues. First, it's debatable whether there was a discovery violation. And second, the Ninth Circuit case law directly on point says you can't use the sanction of exclusion when there's no finding of willful violation. If I can start with the latter, because that's where the case law is on. So can I ask you first, though, what this expert was going to testify about and how it was going to help the defense? Because it seems to me like it has to do with whether he intended to shoot the officer, and that seems to go to the count that actually he wasn't convicted on. Well, I don't think so, Your Honor. What it goes to is the officer credibility, for one thing. It goes to who fired the shots and how they got fired, which I think goes to the overall tenor of the struggle. The officer would have testified about something called sympathetic squeezers You mean the expert. The expert would have testified about something called the sympathetic squeeze response. He would have testified about the implications of no gunshot residue being on the officer's clothing or body. And he would have testified about another issue, too. But those are the two critical ones. The sympathetic squeeze response would basically ‑‑ I actually got curious, and I internet researched this. The sympathetic squeeze response basically says when you're squeezing something with one hand, you can involuntarily squeeze with another hand, and that can make the shots go off. So that would tend to back up and enhance the credibility of Mr. Moreno's version of events. And enhancing the credibility of his version of events, I think, would be helpful as to all counts. Second, the gunshot residue. The officer, you may recall, said one of the shots was fired like right by his head, presumably right by his body. This expert would have testified that there would have been gunshot residue on his clothes and or his face or head if that had been the case. I mean, it's pretty many steps removed, though. I mean, so I guess it would help with the credibility generally, but it's not like ‑‑ I mean, whether he tried to shoot him in the head has to do with the attempted murder count that he wasn't convicted on, right? It's a little hard to see how it helps with the robbery of the car. I mean, it's many steps removed of how it helps with these other counts. It's not just whether he shot near his head. It's also who fired the first three shots. The officer's version was basically those were all fired by Mr. Moreno in an aggressive way. What Mr. Moreno is saying is I was trying to keep the gun away from me and get it away from him, and the shots went off. So it really goes to more than just whether the one shot got fired by his head. It also goes to all of the other shots. So I do think it matters in that respect. How does it affect some of the other charges? You say that it would be dispositive, we would have to reverse everything. What about, again, the vehicle, trying to steal the vehicle? What's that got to ‑‑ the expert adds nothing to that, does he? Well, if the force that Mr. Moreno is using is force in self‑defense, I don't think it could be force that would support attempted robbery of the vehicle. For attempted robbery of the vehicle, you have to intend to use force to take the vehicle. If his intent in using the force is to protect himself, then he's not intending to use force to take the vehicle. So I think to use that specific count that Your Honor brought up. Same thing with attempted robbery of the gun. I mean, if he's just trying to get the gun away from him and not have it be used against him, I don't think he's using force to try to take the gun, let alone take the gun permanently, which starts getting into some of my attempted robbery element issues. Now, the district court did not have a Dahlberg hearing with respect to this testimony, is that right? Correct. Are we able to view the expert's report and evaluate it ourselves, or would we have to send it back? Unless you had a really clear extensive record, you cannot do the Dahlberg analysis yourself, and I don't think there's any way you have that sort of record here. That's the estate of Barbarine and Christian cases that I cite in my brief. Those cases also say you can't send it back for what they call a post hoc Dahlberg hearing. You can't send it back for the court to do the Dahlberg hearing after the fact. So I think the Christian case and the estate of Barbarine cases are pretty clear on that, Your Honor. Well, let me ask you this. Assuming that your argument on the expert report prevails and we had to reverse on that grounds, would we need to even reach the other issues dealing with instructions? No, unless you wanted to do it to give the court guidance on remand. But, no, you would not need to. There would need to be a Dahlberg hearing on remand, though, or could be a Dahlberg hearing on remand. There could be. I think we have – I actually have some notes, and I could talk about – there's some pretty strong support here for some of the expert's testimony coming in. He has an extensive law enforcement background and included expert testimony on shooting reconstruction and involuntary discharge. He spent so much time looking at the evidence that they ended up not being able to get his report done until a few days before trial. So I'll save the rest of my time for rebuttal unless the Court has questions. Good morning, Your Honors. Angela Woolridge appearing on behalf of the United States. With the Court's permission, I'll begin where defense counsel did with regard to the excessive force argument. And I would submit to the Court that Judge Friedman is correct that the self-defense instruction that was given by the Court adequately covers the defendant's theory. And as this Court is aware from its case law, the defendant is not entitled to any instruction in his chosen language, but simply the inquiry is whether the instructions given adequately covers the defendant's theory of defense. But doesn't the spam court decision clearly say that in this situation something more than the standard instruction is necessary? The defendant's requested instruction number four reads, a person has a right to resist an officer who is using excessive force. Where in the pattern instruction that was given, is there an explanation that that's so? Well, first of all, we look to the fact that the instruction has to be supported not only by law, but also in fact. The facts in Span were drastically different than in this particular case. And in this case, the excessive force instruction would not apply because there wasn't evidence of resisting excessive force. In fact, it was anything but resisting. Well, isn't there a question of whether the officer was using excessive force? There certainly, the defense certainly raised that issue. Well, is there a factual issue, yes or no? It's our opinion that there or it's our position that there is not, Your Honor. Well, I understand, but could this Court decide as a matter of law there was no excessive force under these facts? I believe that the Court could, given the facts, because even the defendant's own statements were not that he believed the officer was going to shoot him. He was more worried of an accidental discharge, an accident, someone getting shot by mistake, which would not, of course, an accidental conduct does not rise to the volition needed for force. But if the officer pulls out his gun and points it at you, isn't there always going to be a question of whether that is excessive force under the circumstances? Again, I think it would be something that's very particular to the facts at issue in this case. Here, under the circumstances, we have an officer who's alone in a remote area with two individuals that he that one of which is being combative, is being non, is not complying with his commands, is repeatedly telling him. In fact, I believe the defendant in his own statement said five or six times he told me to get down, and I said no. So the defendant is admitting that he's resisting the officer, that he's telling the officer, no, I'm not going to comply, no, I'm going to go back to Mexico. So under these circumstances, the officer that who is alone in this remote area and has two subjects, one of whom is being combative, I would submit to the Court that it's not excessive under the circumstances. Was that issue raised below? In other words, did you or your colleagues ask the judge to instruct as a matter of law that there was no excessive force going on? No, Your Honor. And I would point out the reason you probably didn't do it is because it's factual. Then isn't the defendant entitled to this instruction? Under these facts, Your Honor, I would submit he's not. Because again, what he asked for in the excessive force instruction would be that a defendant has a right to resist. Here we have much more than resistance. We have the defendant by his own statements saying that he knocked the officer down with all the force he had. I believe it was on exer of record page 99. He stated when asked on a scale of 1 to 10 how much force, he said he used a 10. He repeatedly talks about how much force he used against the officer, that he punched the officer, that he knocked the officer down. Again, this isn't resisting. This is actively using force against the officer. So even if that was given, that would not have, first of all, had not made a difference because the facts here go so much farther beyond resistance. But the judge did not abuse its discretion in not giving this instruction under the facts because it was not covered. This is not resisting excessive force. This is actively employing force against the officer. And certainly, if the jury were to believe the defendant that he reasonably believed that he was in danger of death or serious bodily injury, that self-defense instruction as given would have adequately covered that theory of defense. Had the jury believed the defendant, believed those statements by the defendant, which, of course, were inconsistent, as we point out, but if the jury had believed that, they would have acquitted him on all those charges. The instruction that was given, it says, if the person reasonably believes the force is necessary, it seems to me that the pattern instruction that was given doesn't pick up this problem of excessive force. Now, having said that, clearly you make a strong argument that there was no excessive force, but the district court didn't find that, and I think it would be So you're kind of bound by an issue for which, apparently, there's no instruction to govern it. Isn't that where we are? And again, Your Honor, I we've – it's our position that the self-defense instruction does govern it. It does because even if there's excessive force, the response still has to be reasonable. Excessive force does not give a defendant carte blanche to then do whatever he wants. For instance, a defendant who believes that an officer is using excessive force by drawing his gun doesn't have the right to use as much force as he possibly can and take the officer's gun away from him. There's no support for that as a defense. Again, resisting, perhaps, but that goes, again, so much farther beyond resisting that it's completely inapplicable under the facts in this case. And, Your Honor, even if there was an issue of excessive force, which, although the court didn't expressly make a finding, I believe by rejecting the instruction as proposed by the defendant, although it wasn't expressly – the finding wasn't expressly made, it does – I think the court did determine that it was not appropriate in this case that the error would be harmless because, again, had the jury believed the defendant's, although inconsistent, version of events, if they were to believe the best statements that the defendant made to his theory, they would have acquitted the defendant on the self-defense instruction, because that claim that he believed the officer was going to lose a bullet or accidentally shoot someone, that claim would have been, in fact, false squarely within the self-defense instruction had the defendant been believed. And we submit that, to answer one of the Court's earlier questions, all of the charges, except for the illegal reentry charge, were based on the force from the fight, as the actual force that was employed by the defendant. So you would agree with the appellant that if we conclude the instruction was improper, it would affect all counts, except for the illegal reentry? It would affect all counts, Your Honor, if it was improper and if the error wasn't harmless. And, again, we would point out that the robbery count, it is, of course, our theory that the force employed in the robbery was the force that the defendant used against the officer in this fight. And so that was the rob – both robbery counts stem from that pattern. Essentially, this pattern that the defendant engaged in throughout the encounter of using force against the agent, all in furtherance by his own statements, to try to get away, because he didn't want to go to prison, because he was in the country illegally. He, by his own statements, didn't even want to do six months, so that's why he did all what he called all the stupidities that I did and that I shouldn't have done in his words. So, again, this is, again, active force for the – and by the defendant's own statements, not because the officer was using excessive force against him or the defendant even perceived excessive force, but because the defendant did not want to go to prison. And that was his theme consistently throughout his statement. He became inconsistent on many, many times. At first, once claimed he never went into the vehicle until he was told that there were cameras in the vehicle, then – then admitted to that, initially claimed that the officer fell to the ground, then admitted he pushed him with all his force. So, again, he's very inconsistent. But the one thing he's consistent about throughout his rather lengthy statement is that he did all of these things to avoid being caught and avoid having – going back to prison. And from the moment the officer first told him to put his hands up or to get on the ground, he said, no, I'm going back to Mexico. And that was his desire the entire time. Not any – any sort of perceived excessive force, any sort of perceived unlawful force, but his desire to simply get away and get back to Mexico to avoid being caught and avoid going to prison. Counsel, you've got another issue that's a serious issue, and that's this expert witness. Correct. And again – So how do you respond to the arguments? Your Honor, there are three things here. First, certainly there was a discovery violation. The Court had a scheduling order in place. This was in February of 2015. The defendant didn't comply with it. He did not comply with the government's request. That was filed timely pursuant to the discovery order. The officer's report – well, first of all, notice of the officer – I'm sorry, of the proposed expert was given less than three weeks before trial. The actual reports and opinion was filed two business days before trial, the Thursday before a Monday trial start. So I would submit that there was – and as this Court recognized in W.R. Grace, the district's courts do have wide discretion to enforce their discovery orders and have – can enforce those orders, including sanctions of preclusion of a witness. Would you agree that the district court's decision was solely based on the discovery violations? The court did not hold a Daubert hearing. It did express concern about whether the expert would even be able to testify. I understand. But that's – we're not – there's no Daubert hearing. Right. But the district court said, on the untimeliness of the disclosure, I have considered his opinions. But apart from the nature of the opinions, which we'd need a Daubert, the court says we're going to exclude it because they were not timely. Correct. And you make strong arguments to that effect. But what do you do with the case law in the Ninth Circuit that said unless it's willful and blatant, a violation, that you can't do it just on a discovery deadline violation? Your Honor, I would submit that it was willful and blatant, because when it comes to expert testimony, when it comes for expert witnesses, this is an area where the parties, including the defense in this case, have complete control. They choose – Let me just ask. Did the district court rely and make a finding that it was willful and blatant? The court did not, perhaps, say – use those terms, but the court did say that the defense chose not to have its expert look at the weapon. In fact, the defense first asked to have the person that they had not disclosed as an expert just but retained to help with the investigation in May before a June trial date, long after the discovery deadline as set by the court had passed. So, again, the defendant made those choices. The defendant had the ability, and the court found that the defendant had from August the opportunity to retain an expert, to consult with an expert, to file a notice of an expert, and chose not to do so. Let me read from Valdelzo. Exclusion of a witness as a sanction is generally appropriate only in cases involving willful and blatant violations, citing United States v. Peters, which has been on the books since 1991. Now, don't we have to assume the district court would recognize that that's the state of the law, and yet the district court made no findings of whether the violations were willful or blatant or both? Well, the court, perhaps, again, didn't use that language. I would think – I would submit that the language it did use when showing all the steps and all the points along the way where the defendant did not chose to not comply, that that, in essence, is a finding. And I just wanted to also point out that the only charge that this had bearing on was the charge of attempted murder, which the jury hung on and the government eventually dismissed. So this had no effect on the other charges, because his opinion, which essentially was that the first shot was one of a sympathetic squeeze or an intentional discharge, would only go to the defendant's intent whether or not he intended to kill the officer. All of the other charges, the assault charge, that was established by other evidence and that first shot, whether that first shot was intentional or not, would not have But doesn't the expert testimony or proposed testimony deal with all of that? Your Honor. How can you separate out that testimony? Because with regard to that first shot, that's whether the defendant, again, had the intent to kill the officer when the gun was fired versus some other reason for the shots being fired. The assault still happens when the defendant pushes him down with all his force and takes the gun away from him. The 924C count still applies because the defendant stated he took the gun during the struggle while he was firing the gun while he was fighting with the officer. Did you make this harmlessness argument in your brief? It seemed to me that it's a pretty good argument, but I didn't actually see you articulate a harmlessness argument. I'm not sure if it was in the brief, Your Honor, but I would submit that even the issue of this expert testimony, because it would not have effect. And the Court did find, and we did, I believe, raise in our brief, the Court had questions whether these opinions would even be relevant as to the charges here. So I would submit that in that regard, the exclusion of this expert would not have any effect on the charges that are before the Court at this time. And I see that I am over my time. I'm not sure if any further questions. Thank you, counsel. If I could dwell on my comments in three minutes, Your Honor. First of all, I don't think the government did make a harmlessness argument in its brief. And there is case law in this Court that says at least except in extraordinary circumstances, courts won't raise harmlessness arguments, but it wasn't harmless here. First of all, the shot that was supposedly trying to kill the officer, the gun being in his chest where he said he pushed it to the side, that was actually the third shot, not the first shot. I think more important here, this sympathetic squeeze response would have put a whole different tenor on the encounter. If what you believe is these shots are all going off accidentally, at least the first three or four, and then Mr. Moreno is panicking, he's trying to get rid of all the other bullets in the gun, that paints a whole different picture that gives the jury back there in deliberations a whole different take on the case. So it's almost like a Gestalt thing. The Gestalt becomes completely different if you start believing that's what happened. There's no way. First of all, Your Honor, Judge Zille, you're right. There was no finding of a willful violation. There has to be a finding by the district court. There isn't. Breyer, except there's a difference between a sanction and simply enforcing a discovery order. And in W.R. Grace, for example, that's they basically said we're enforcing the discovery order. I don't. I mean, if the shoe were reversed, you'd be arguing vehemently on the other side that this was a too late a disclosure. Lawyer. You didn't have a chance to respond. I mean, I'm sympathetic to courts saying, look, we need to enforce our discovery orders in fairness to everybody. So what's wrong with that? And the court certainly could have ordered a continuance or done something. The question is whether you can. And the problem in W.R. Grace is different because there is a different issue with a defendant because there's the constitutional right to prevent a defense. And I guess, yes, in a sense, defendants are better off than government. But, of course, defendants are going to go to prison for 43 years and the government isn't. So. But does that mean you just can always violate the deadlines? No. Not willfully and not on purpose. But when it's inadvertent or accidental or even negligent, yes. What's inadvertent about this? I'm sorry? What's inadvertent about this? Well, what's inadvertent about it? First of all, the discovery order, Your Honor, gets issued five months before trial. Right. And all of a sudden it gets three weeks. So if you don't already have this expert you're thinking of, all of a sudden you've got to scramble and do it in three weeks. But you could ask for a continuance then or some kind of extension. I mean, you could say, well, that's too short. Can I have an extension? I didn't see anything like that in the record. And maybe that's what the defense should have done. On the other hand, part of the delay here, it was not just the defense. If you read the record, they had problems setting up appointments because the evidence was in a different city than the agent. Again, solvable by a motion. Well, I think that's true, Your Honor. But the case law says, and I don't think the case law talks about a discovery sanction. I don't think it distinguishes between a sanction and enforcing an order. I think there is a difference. Well, I guess to some extent I think the rule is maybe a stronger rule. But certainly W.R. Grace noted the distinction because W.R. Grace didn't reject Finley in that context. It distinguished Finley as involving the defendant's constitutional right. So W.R. Grace didn't respond by saying an order was different. The order in W.R. Grace was different, too. It didn't, you know, you still have the problem of this order incorporates Rule 16's intends language and the question that was discussed in Swartz about whether you can intend to use evidence or an expert that you don't already have. So basically your position is that discovery orders are meaningless as to the defendants. You can just say, okay, we came up with this expert late. I'm sorry. Let's put it on. Well, first of all, if you had the expert four months ahead of time, you didn't disclose him, the discovery order would certainly bar you. That wasn't my question. You basically said if you come up with an expert at the last minute, you say I didn't know about it, this expert showed up, let's put him on. If the court agreed with you that that was in good faith, but also the court, if the government needed more time, always has the option of giving the government more time by delaying the trial. So it's not like there's no other remedy here. Except it renders the effective discovery order somewhat meaningless under your theory. It doesn't render it meaningless. It renders it qualified. It does mean that if a defendant in good faith doesn't come up with his expert or maybe the idea of the expert until later, he doesn't get precluded as opposed to some other sanction. Let me ask you a different question, different topic. Do you think drawing a firearm alone constitutes excessive force? Is there a case that says that? I think it's something a jury could find was excessive force under the circumstances. Do you have any case that where just simply the officer raises a firearm and that's considered excessive force? I don't know of a case off the cuff one way or the other on that, Your Honor. And if that is not excessive force, simply drawing the firearm, doesn't your whole theory fall apart? Well, you'd have to have a jury be able to find excessive force, which, of course, that's a little bit different than it being excessive force. It can be excessive force. And looking at our qualified immunity cases, I just don't think the Supreme Court would ever say that drawing a pistol alone is excessive force in violation of the Constitution. Well, in the qualified immunity context, I think I know, but I mean, it's sort of similar here. Right. But what I was going to say, though, in the qualified immunity context, what you're looking at is whether an officer would know that. You're not looking at whether a jury might find it from, you know, might find it Well, we have both. You might decide. I mean, there are two issues in qualified immunity cases. So you could have both issues. You could have both issues. But most of the time when they're deciding there's qualified immunity, they're just deciding it wasn't clear to the officer. You're not You'd have to. I mean, the constitutional violation would be excessive just to draw it. And I'm not sure I've ever seen a case where drawing a firearm alone constitutes excessive force. And if that's the case, hypothetically, doesn't the rest of it be irrelevant? Perhaps. We're not talking about a constitutional violation here. What we're talking about is whether a jury could have a reasonable doubt about whether a reasonable person could believe that his life was in danger when this officer pulled the gun. And that's self-defense, right? That's self-defense. But in the context of an officer, it has to be force that's excessive. Not in a case where there's no instruction about officer being immune from this kind of defense. I mean, you're relying on a case in which the jury was told that if it's an officer, you can't use this defense.  Except And that wasn't told here. Except the part of the case I'm relying on is the part of the case that says an instruction with the unlawful language doesn't tell the jury excessive force. Again, you don't need to get there if you rule in our favor on the discovery issue. I do really think, Judge Thomas, that the I'm skeptical about this, but go ahead. I just don't think the Ninth Circuit case law becomes inapplicable when it's an order instead of a rule. If it was, why didn't W.R. Grace dispose of it that way instead of disposing of it by distinguishing Finley? I don't know. I didn't write it. And you weren't on the panel, I checked. I wasn't on the panel either. But I think, I mean, it's the same constitutional right of the defendant. And the Schwartz case where I talk about the intends language making it not a discovery violation is actually also a court discovery order as opposed to a Rule 16 case. Okay. I think we have your argument now. Any further questions? Thank you both for your arguments today. The case just arguably submitted for decision.
judges: Thomas, Friedland, Zilly